Case number 231733 Adam Kanuszewski et al. v. MI Dept of Health Human Svcs et al. 15 minutes argument to be shared by appellants with 15 minutes argument for appellees. Mr. Ping, you may proceed for the appellants. Good morning. Good morning, your honors. Daniel Ping appearing on behalf of the state defendants. I'm reserving two minutes for rebuttal. I'm also sharing three minutes with counsel for the biobank. Very well. Michigan's newborn screening program and the Biotrust for Health do measurable, life-saving work for Michigan families. The programs collectively have saved thousands of babies. Given the importance of this compelling effort, it is crucial to address the confusion characterizing the decisions below. The district court expressed its discomfort explicitly with its belief that this court had instructed it to sidestep threshold inquiries of whether the alleged 14th Amendment right is deeply rooted in this nation's history and traditions. And the same thing happened with the Fourth Amendment claim where the district court disregarded the defense that there was no reasonable expectation of privacy by reference to this court's citation to Skinner in which chemical analysis of the blood occurred resulting in identifiable results about an identifiable individual. Answering these questions would have been dispositive because the unrebutted evidence reveals our most compelling set of facts, which is nothing is revealed by the program's activities. The program's staff and policy assiduously avoids the type of harm that characterizes plaintiff's complaint. And most recently in Dobbs, the Supreme Court reaffirmed court's duty to root the alleged 14th Amendment due process right. Are we bound by the previous panel's decision on the substantive due process? I mean, it basically said, look, if this is the way the program works, it's a substantive due process problem. But then you have discovery, you have more information. What changed in the case, if anything? Well, to answer your first question, Your Honor, you're not at all bound by that decision because that was on a motion to dismiss. And we're here now after fact finding. But I mean, it's a legal decision, isn't it? I mean, at some point you would have a certain set of facts. And then the court says this if this set of facts is true, it's substantive due process violation. And then whether are those is that set of facts? I mean, does that turn out to be true? You know, there's retention, there's testing, whatever it is. I mean, that seems a little bit more nuanced than simply saying, well, it was a motion to dismiss, so you're not bound. So I think if it turned out to be the case that everything in the complaint was proved to be true, there wouldn't be a very good reason for revisiting the holding. But the 95 percent of that complaint was disproved. One of the allegations is that it's easily possible to request and break the blind, causing the private medical and genetic information of the inmates to be revealed. There are no legal protections on who may access, use, or utilize the private medical and genetic information. It's sold to bio-sample brokers for sale. There is a profit motive. So the fundamental fabric of these programs was misapprehended in the complaint. It was later soundly disproved. And to that, I would add, you know, if you look back at this court's 2019 opinion through the lens of that principle from Dobbs and the other cases that express that same idea, you know, it said that as far as collection and testing goes, you know, at the initial stage that's no longer before the court, the court said that the right to care and custody seems to include the direction of medical care. But then when you look at the post-testing retention and use, what the facts revealed is that we're talking about a privacy right under the 14th Amendment. And this court recently, not so recently, 2008, in Wilson v. Collins, said the 14th Amendment right does not encompass a general right of nondisclosure of personal information. That was in the context of DNA samples. The only privacy interests that are recognized under that provision of the Constitution relate to marriage, procreation, family relationships, child rearing, and education. It framed that as an exclusive list. But I don't think that we're talking about, I think the district court recognized or thought that it was the right to direct medical care was the problem, right, based on our, that that was implicated as a substantive due process matter based on what we had said in the previous opinion. Is that right? I mean, I don't think there's a, is there a privacy claim being made? I don't know where you're going with that. In substance, Your Honor. I can't really get my head around the idea that this is medical care or medical treatment, even medical diagnosis, at the most generous. So, you know, I think it's very important to at least, you know. But I don't think, did the district, I don't remember whether the district court, I thought, I didn't think the district court relied on kind of a privacy right here. I think it just said, hey, I'm bound by what happened before, a substantive due process violation, right? Yeah, and that's kind of our point, Your Honor. Yeah, I mean, I'm saying that's, you're saying, hey, that's error. There's the right to, the parents' right to direct the medical care of their children is not implicated by the post, you know, the retention of these samples and the data, whatever it is. That's right. But, so I'm a little bit confused. Why are we talking about privacy then? Is there? Because there's no other way to conceptualize this claim now that the facts are in. Okay. There really isn't a privacy claim here, is there? I mean, you say maybe it's lurking behind the scenes or something, but there's not an express privacy claim, is there? That's true. Okay. That's really all I need to know. All right. Okay. And, yeah, so I think it's important, especially since this Court's 2019 opinion gained some traction in the Schermetti case, to clarify that that was a decision on the pleadings. It was not actually an evaluation of the program post-fact finding. Okay. Can we talk about that and whether Michigan recognizes a possessory interest? Sure, Your Honor. I think it's nuanced because through its policies, the Department of Health and Human Services has given parents a dispositional right over these blood spots. It will honor any directive to return or destroy. But plaintiff's claim is that at the point the testing was completed, they should have been destroyed. So that, first of all, kind of disclaims a property interest. But at that point, if you look to property rights being derived. How does it disclaim a property interest at that point? How does it disclaim a property interest at that point? Well, plaintiff's position is not that they should have been returned those blood spots in the first instance. They simply wanted them to be put into the incinerator. And that's not consistent with a property interest. What they're really making there by saying, we don't want anyone else to have it and we don't want it either, is a privacy claim, not a seizure claim. Why would that be true? I mean, if I have property and I say I just want it to be disposed of and I want to be the one that makes that decision, I still have a property interest, don't I? Well, you don't create a property interest. I mean, are you saying it's like something I put out for the garbage and then I don't have a property interest in that because I'm clearly not exercising any more dominion over it? I'm disclaiming it. I think a better source for determining the property interest here rather than the pleadings is the state law in question. And if you look at the newborn screening statute, 333.5431 of the MCL, that requires the department to establish a retention schedule. It requires it to make the samples available for health research. And that's consistent with property laws treatment of biological material as objects sui generis. If you ask for your appendix to be returned to you after your appendectomy. Can I ask you a question because I know your time is running low? One of the things the district court said was that the blood samples could be later used to identify the suspects of crimes. And I'm curious because I don't see any support for that anywhere. But is that something that could happen, a suspect of a crime? No, Your Honor. And I think that factual finding is kind of the theme of the last opinion in line here, docket 263. There is zero evidence for that. It's been disclaimed by the witnesses. There is no law enforcement purpose. What about identifying the victim of a crime? So the policy of that, which we don't consider to be a law enforcement purpose, is that that will be cooperated with if the parent or guardian of the spot in question gives their consent. And MDHHS is approached by. I take it that wouldn't be ripe either. There's a ripeness problem, right? I think so, Your Honor. I mean, we don't know. It could happen in the future, but nobody knows. But how does it work? Like when there's a victim, are all these specimens sort of tested and compared against the known victim's DNA? I mean, how does that process work? No, Your Honor. So I'll give you an example. Let's say there's a missing person in an area and there was a body found burned up beyond recognition in a fire. The person who's a guardian of that missing person can say, you know, I'm worried that this was my child who's in the fire. You can pull my child's blood spot and compare it against what was recovered at the scene of the fire. And so there's no sort of survey happening. They're not pulling any spots to compare it. It's simply a consenting process where that individual, their spot is pulled at the direction of their guardian. So that hasn't happened with any other plaintiffs? That's right. And my time is up. All right. Any further questions for Mr. Ping at this point? All right. Let's hear from the defendant. Good morning, Your Honors. Thank you. Jeremy Kennedy appearing on behalf of Christopher Krause, the Executive Director of the Michigan Neonatal Biobank. I have three minutes, so I'm going to try to be brief. One of the problems that the biobank has with the decision, we are essentially a storage facility. We do not do any of the testing. We do not do anything other than hold the residual DBS cards for potential future use down the road. One of the findings of the district court was that the storage and use of these RDBS cards violated the parents' rights to direct the medical care of their children. First of all, we'd say storage by the biobank is not a medical procedure. Storage by the biobank is simply that, storage. They receive the dried blood spots from the state in a de-identified form. They have no way of knowing who the blood spots come from, who the individual is that they belong to. They simply receive them. So they have some kind of a number, I take it, so that you could match it up. The data is retained by the state or whatever, and then if it needed to be matched up, it could be matched up. Is that right? Correct. There's a, I believe it's an eight-digit code that's put with each sample that we receive. All we receive is the code and the spots. The state retains the code and the individual that that is linked to. We can only pull that when the biobank is asked to pull a set of specimens for whatever purpose, whether it's to destroy a DBS card or an RDBS sample, to do additional research on a set of cards, whatever the state sends a list that essentially says we would like you to pull these specific RDBS cards, send them to where they are, wherever it says that's what we do, and send it along. Now, what was it that was, now something was destroyed, right? There was a mootness issue earlier in this case. What was it that was destroyed? I believe the plaintiffs in this have, because they asked for their samples to be destroyed, the state, they filled out the paperwork with the state, as I understand it. The state directed us to destroy these samples. We, pursuant to how we proceed, destroyed those samples. So the mootness was raised because the injunctive relief essentially has been performed and the cards of the plaintiffs, DBS samples of the plaintiffs, have been destroyed. All right. The mootness issue was addressed by the motions panel of our court? That's correct, yes. Are we bound by their ruling on that? That's a good question, Your Honor. That's why I'm asking. I know. I have not considered that. I would think that this court should be bound by it. I think the question, the way they addressed it in the answer, I believe, was the correct conclusion. There is still a constitutional question outstanding on whether these samples have been used or not. But is there an actual case in controversy that's still alive at this point when there is no relief, there is just basically a judgment? I think there is because there's potential for future liability down the road on these same questions in a different case. If this is decided to be moot, then we're essentially relitigating the same issue potentially down the road. If there's a decision on the merits of this, whether the storage is not a constitutional violation, that's going to be binding on future litigation. I know there's at least one case pending in the state courts in Michigan on this. I suspect, depending on the outcome of this, there will be further litigation down the road, and the biobank is going to be implicated necessarily because we are the storage facility, so that we are potentially holding on behalf of the government or the potential plaintiffs the samples here. So I think the mootness decision was correct. I think that I don't believe the matter is moot. I think even if it is, however, the court can- Well, the data wasn't destroyed, was it? No, I do not believe so. So you retained their data. We don't retain the data. The biobank is much- Sorry, okay. Like I said, we're the storage facility. We're kind of like public storage. You put your property in there, we hold it for you, and when you want it back or you want it sent somewhere, we send it out. Right. Okay, any further questions for Mr. Kennedy? All right, thank you.  All right. Good morning. Good morning. Philip Ellison, appearing on behalf of the Eppley plaintiffs in this matter. To answer your question, you are not bound by that motion panel's decision. I would point to page 30 of our brief footnote number 11. It is OPRS versus Federal Home Loan Mortgage Corporation, or, yeah, Corporation 64F4731, which says that the decision of a merits panel- or, excuse me, of a motion panel on mootness issues does not bind this court as the merits panel in that matter. Okay. Now, you argued for mootness, right? I did. The motion panel. I did. And is it still your position that the case is moot? Yes. It is my position. Not the entire case is moot. I would argue that the case is moot as to the biobank, Mr. Krause on behalf of the biobank, because as he just correctly indicated, they simply hold the biosamples themselves. The only claim that remains viable to this court to be challenged is the data claims, and the data is held by the state defendants in this matter. Because the case is moot, and what the counsel for the biobanks director just asked for is an advisory opinion, and this court can't issue an advisory opinion as an Article III limitation. And I have to correct- But it wouldn't be moot as to the state, right? As to the data claims, that is correct, but as to the- Okay, but the data claims, that would cover the Fourth Amendment. Correct. What about the substantive due process claim? The substantive due process claim would become moot under these circumstances, because I have to correct Brother Counsel in that these samples were not destroyed by the biobank. They were returned to my office, and we disposed of them, pursuant to the judgment, compliance with the judgment that they did not seek a stay on in that respect. This court has said repeatedly that if you comply with a judgment of the court and don't seek a stay when equitable relief is sought, you're waiving your ability to raise that issue later on because there's no longer a case or controversy because otherwise it turns into an advisory opinion offered by this court. To answer it, I would like to also answer your question hand-in-glove. You've asked whether on the issue of substantive due process, whether Kanischewski I binds this court, and the answer is I think it does. And the standard that the court established at page 419, and I'll just read it very briefly, is that when defendants retain the samples, transfer the samples to the biobank, and store them indefinitely for use by the state or third parties without informed consent, such actions constitute denial of parents' fundamental right to direct medical care of their children that must survive strict scrutiny. I think you're bound by that as a matter, as a legal principle, that, as well as that's, of course, that's how the district court and myself both interpreted the direction from Kanischewski. I mean, it would be odd for us to be bound by a motion to dismiss a decision like that. It's preliminary. You're supposed to take everything as true. The court goes on to say there are going to be some things that come out in discovery as the case goes on. I mean, it's hard for me to say in a vacuum because I don't – it's odd to me. The conclusion, it would be odd to me in a vacuum that this retention of the sample somehow affects a parent's right to direct the medical care of their kids. That seems odd to me, so perhaps that's why we kind of left it, so that there could be some development and evidence that would say, hey, it's – in fact, it does affect a parent's right to direct the medical care of their children, but I don't see anything in the record that after that part of this case that would confirm that. Well, I think you have to cleave that into two pieces. I acknowledge in a motion to dismiss stage you have to accept the allegations and the complaint is true, but the panel, the first panel that decided this established the law of the case, not the outcome of the case, but the law of the case. So on remand, had I not established the facts as I alleged them under the law of the case that was established in Kanischewski. The law of the case always depends on the posture that the case came up to the Court of Appeals on, right? I mean, it depends on the judgment that's being reviewed by the Court of Appeals. That determines what the law of the case effect is, right? So if all we're saying is, hey, it's 12B6, you know, at this stage of the case, this is true. I'm not sure that that means that for the rest of the case, given a full record, that that's still true. The difference is, as I'm trying to articulate, is that the panel one decided what the law is, not what the outcome is, not what the evidence is, not whether I met my burden under those standards. It simply said this is the law that is to be applied by the district court on remand, and this is the law that, under this court's Sixth Circuit rule, you're bound by that previous determination of what the law is. Now, it doesn't mean I – just because they said this fact in Kanischewski 1 doesn't mean that fact is still true. If I don't establish that fact upon remand, then the law doesn't change, but maybe the outcome then changes in that respect. So that would be my position, is that you are bound by Kanischewski 1, at least as to the establishment of what the legal principles are, not necessarily the outcome. Now, if I came back – Do you think that's a holding of the case? I do think that – Opposed to dicta? No, I think that's absolutely the direct holding. It might be instructions to the district court, but is it a holding that we're bound to follow because it's a prior published opinion? I mean, that's the authority you're relying on, isn't it? That is correct. We have to follow our prior published opinions. I mean, it would be – We only have to follow the holdings of them, that's all. Well, the holdings of it was what – I think the holding of Kanischewski 1 was, what is the law in these circumstances? Send it back to the trial court to see if, Mr. Ellison, what you're saying about this program is in fact true. But that said, even if you were to disagree with me on that proposition, I think we've established clearly that there is a substantive due process right of parents to direct the medical care of their children because, as the state has even itself explained and actually shown in this process, midway through we're arguing about this case about that parents have this right and we protect and we won't disclose and everything else. And, of course, midway through we find out that the state just transmitted all of this information, medical information, and made available medical spots to all the medical providers in the state of Michigan, doctors, so third parties. So the very thing that they're claiming here and claiming below that we keep this under tight seal is in fact not true. What they're doing is they're deciding who gets to have access to this information. And the question is not about whether an end user who has a blood spot in their hand can identify that information. It's whether the plaintiffs, the children, vicariously their parents, if their privacy has been eviscerated. Now, I believe that because the state in this instance does not give parents the choice about whether to provide that sample for testing, that's automatic. This court did not address that, declined to address that in Kanischewski 1 as to whether or not that sample can be refused to be given. But because the state compels that without a choice of the parents, they can't come back and say there's somehow forfeiture or waiver or some sort of giving away of a particular right when they were forced to give that sample without their knowledge and consent to begin with. You used the word privacy again. So you consider this to be a fundamental right? Is that it? I do consider this a fundamental right. What is the authority that you have for that? I would base this on Cruzan is the best example I can have to establish that this is a parent, that this is a medical rights are a decision of an individual. Troxel, I would point to, is the hook to being the connection to children in that unique circumstance that parents exercise the rights of medical decision and medical activities for their children. This is like kind of a general right, though. I mean, you don't have any specific as to the blood samples, do you? This is a case of first impression. I'll be the first to acknowledge that. No one has dealt with this to the level and the scope that I have as part of this particular court case. The closest we have right now, there is a parallel case going on right now in New Jersey that is largely mimicking the work that I've done on this case. There's been no decision by the district court judge in New Jersey in that matter. I'm going to switch gears to the Fourth Amendment unless the court has any questions about substantive due process any further. All right. With the Fourth Amendment claim, there's really two components to that. Again, the Fourth Amendment claim deals with the right of privacy. There is a privacy component as to the blood spots themselves. The keeping of that information implicates a privacy right. The keeping of the data is a possessory right. The data itself has been seized. After the testing is done, that data should have been automatically destroyed because what is at the heart of this entire case is parental consent. Moms and dads, even if you look at the cards that were signed by these parents that we say fail to be sufficient Fourth Amendment constitutional. So are you relying on a reasonable expectation of privacy like a cat's theory or is it a property interest? I would say the difficulty is that courts have not explained exactly what blood spots are once they've been involuntarily taken from a child's foot. Is it a property interest or a private interest? I have asserted both below. I categorize it in my mind as being the blood spots themselves are a privacy interest. The blood data itself is more akin to a possessory interest because it's being seized after it's being completely done. But I did advance both theories below before the court. This would be a helpful area that I think this court could provide important guidance as to this because we have no guidepost in this whatsoever. Wouldn't the Michigan courts be the ones to look at for the property interest? I'm not saying, well, I suppose we could certify. Are you asking for that? I am not asking for that. I would indicate, Brother Counsel indicated there is a Michigan court case, and I know it well because it's myself and my wife and my son against the state of Michigan making these exact same claims under the state constitution. And for now, my son is 7-1⁄2 years old. That case has been pending in the trial court for seven years and has been stayed for five. They are waiting for your decision first, and they've explicitly said they're waiting for your decision first. Don't we look to state law to determine whether there is a property interest? You do look to state law to determine if there is a property interest, but the important part of this is that the second part of that is if the interest here is tied to, because it deals with personal information and personal autonomy, consent is a piece of that component. What's the best authority you have that Michigan recognizes a property interest in these blood samples? There is no case law. There is zero case law on point on this. The best I can point to is that the statements of the program itself has claimed, has taken the position that the department has a quasi-ownership interest with the parents on this property. I disagree that they have any sort of ownership interest, but at least that's their assertion. Okay. Have you pled in your complaint a property interest? We based it on both. I don't recall if I specifically used the word property interest, but our theory of the case was that it was under- I'd like to know if you actually pled for a property interest, and you say you don't think you did. I'm not standing here certain. I pled it as a Fourth Amendment claim but asserted both theories before the trial judge. Okay. Did you present any evidence at summary judgment of a property interest? Summary judgment of property? Well, the program itself, the idea that they are asserting a qualify ownership aspect of this, yes. That was all submitted. And there's a humongous record with the cross motions for summary disposition that were filed in this case. The data, the Fourth Amendment claims went to trial, and we had a five-day trial on the- I know, but I just-I think there's an absence of a claim of property interest, and I think there's an absence of proof of a property interest, that's all. Well, then if that's the case, I mean, if the reality is, when you say lack of proof, they have to have some-this blood and data, the two different pieces, have to have some sort of legal definition as to what they are. I can't point this court to a prior decision of any court to say what those specific blood spots are under Michigan or Michigan precedent. I would take the position that at least the blood spots implicate a privacy interest, and then, of course, the data itself, which was created and extracted from the blood spots themselves, becomes a type of property interest because the state has at least treated it that way. What were the issues at the trial? What was the trial about? The trial was largely about, I think, that the definition about what exactly happens in these circumstances, about how consent was obtained from the parents at the time of the extractions themselves. It's all about consent. It's about consent. It was a Fourth Amendment trial about consent. Yes. So nobody was really-was the state contesting whether you had a possessory or a property interest? Not specifically. The argument there was largely to lay out to Judge Ludington what happens in these circumstances and what- It's your burden of proof, isn't it, to plead and prove a possessory property interest, isn't it? I think I have done that with at least the policy directives that have been submitted to the-that were submitted to the trial court into the record that they're asserting at least that there's only- You can't say there's no authority, there's no evidence, there's no this. I mean- Some courts- There's really no case then, isn't there? Well, some court at some point had to say, my car. They had to be the first one to say, my car has a possessory interest at some point. And perhaps this court is the first one to say what those is-what that is for blood and data. Would you suggest in the first case, in our opinion, that it could be a seizure if it were- Yes. If the data was retained or whatever, and I- I've asserted they're both searches and seizures. Both theories were advanced before the trial court. Well, I think the law in our circuit's a little confused on whether retention of property is actually a seizure or not. I- I'm dealing with- We have the Fox case and some other, and I know there's a circuit split on this issue, so I don't know. The-the issue of the seizure, I can-if I-I know I have another, if I may finish. Please. The-the issue of the seizure is actually an issue that's before this court right now in a case I'm waiting a decision on It's about the seizure of firearms as part of a case. And that Fox was highlighted there in that this court is running contrary to all the other sister circuits about how you treat Fourth Amendment continued possession of something when you otherwise lawfully took it to begin with. I'm not sure about that. I mean, I guess-I think there's several circuits on the Sixth Circuit side on the retention of property being not- If it's-if it's seized legally and then retained, we don't call that a-we don't call that an illegal seizure, right? Correct. You treat it Fifth Amendment- You could bring a Fifth Amendment claim.  In the D.C. Circuit, they would say that's a-that's still a seizure, right? That was the cell phone case that just came down, yes.  So- Mr. Mathis, do you have questions? We-we spent most of your time asking questions, but I'll give you another minute to wrap it up. Very briefly, I would-I would ask this court at minimum to-I think the court's best path forward at this point now is to dream the substantive due process claims moot because there's something-there's simply no meaningful relief that this court can address without being an advisory opinion and, in fact, treat the- I'm sorry. I just-if-if it's mooted, would we vacate the opinion below? You would not. And the reason why you would not is that the vacator is a remedy that is only when there's a happenstance that's not the act of the parties. And here, the state voluntarily agreed to fulfill the judgment. I'm sorry. So my argument would be, of course, the substantive due process claim is moot. You have no Article III ability to offer an advisory opinion. As to the data claims, we would ask this court to affirm Judge Ludington's decision. Very well. Thank you. All right. Rebuttal. Two minutes. Thanks, Your Honor. If this court's considering mootness, you know, I urge you to review our response on that motion. We think this is capable of repetition, but more important, Munsingwear vacator is appropriate. The reason we did not seek a stay on the destruction of the blood spots is because it is the defendant's policy to direct those-to honor the direction of the parents, which we've been pressing since the beginning of this case. They've made the decision not to make that request. But the tangible-what was the relief the court-the court granted-you had to send a letter or something. Is that right? That's right. That was what you were ordered to do. Yes. Was that-is that something you normally don't do? Like, how does a parent know that they can say, hey, destroy these? That information is provided at the time of birth. At the time of birth.  Yeah. And that-the letter was approved by the district court, and it is not representative of what's usually-it was more reflective of the district court's view of what informed consent. So you did voluntarily comply with that part of it, sending the letter. But you're saying that whatever the result was, which was the parent directing the destruction or the return, was something that they always had a right to under the program. Yeah, and I don't think my clients could have ethically refused that by seeking a stay. That would be contrary to their fundamental ethical- Can I ask you, was the possessory interest-I'm completely changing gears on the Fourth Amendment-was the possessory interest an issue at the trial? Have you conceded that there's a property interest? No, Your Honor. That was certainly part of our closing briefs.  That's issue two of your brief, is it not? Yes. No, but at the trial- Yeah, that's preserved, Your Honor. Okay. And just to wrap up, you know, I'm not hearing any articulation of this Fourth Amendment seizure or search theory after, you know, seven years. It's okay if it's maybe not very precise in the complaint, but at this point I would expect plaintiffs to have articulated that. And if the Court's interested at all, you know, I just have to correct a representation about the facts. The information is not transmitted to physicians statewide. It is available only to a person's treating physician. This is a credentialed system. Consent to enter into a patient-physician relationship implies consent to access that patient's medical records. And the information is held by MDHHS. It can cut off that access at any time. It is not sent out into the medical community. So I just wanted to clean that up a little bit. And so we would ask this Court to reverse the decisions below, both the summary judgment decisions- there were three of them- and the post-trial decision on the Fourth Amendment. Any further questions for Mr. Payne? All right. Thank you, counsel, for your very good arguments. The case will be submitted.